ERNEST TERRIEN *vs.* JOHN JOSEPH.

JULY 3, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action of trover for the alleged conversion of certain garage equipment. The case was tried in the superior court before a justice thereof, sitting without a jury. At the conclusion of all the evidence, he gave a decision for the plaintiff in the sum of $531.88. The case is before us on defendant's exceptions to that decision.

It appears in evidence that in or about August, 1945, the plaintiff equipped a garage in Seekonk, Massachusetts, for the repair of automobiles; that all the equipment was new; and that he then ran the place as an automobile repair shop under the name of State Line Garage. Shortly thereafter he sold the personal property and business to Harry Norman for $2000. He received from Norman $1500 in cash and a note, dated September 22, 1945, for $500, payable in three months, which was secured by a chattel mortgage of even date covering all the personal property in the garage. The mortgage provided that the personal property therein mentioned was not to be removed from the described premises, except in the ordinary course of trade, without the "previous written assent" of the mortgagee. The note not having been paid at maturity, the plaintiff, on or about December 22, 1945, went to the garage to see Norman about the matter and found neither him nor the equipment at that place.

Investigation led to this defendant as the person who was in possession of the property covered by the mortgage. Subsequently, the plaintiff and the defendant, both represented by counsel, appeared at an informal hearing before a judge in Taunton, Massachusetts. At that hearing, according to the plaintiff, the defendant was confronted with the mortgage and also with a list of the items which the plaintiff claimed were covered by the mortgage. The defendant then, according to the plaintiff, admitted that he had bought those items from Norman for $150 and that he had stored them in his mother's garage in East Providence in this state.

At the trial of this case the defendant admitted that he had been shown the mortgage at the hearing in Taunton, but stated that he did not remember whether he had also been shown the list of items as claimed by the plaintiff. In any event, he testified that he had not received from Norman many of the items on the plaintiff's list. As to what he did with the items that he bought from Norman, the defendant testified as follows: "Q. Didn't you, in the presence of the Judge, admit that this equipment was at your mother's home on Taunton Avenue, East Providence? A. What would it be doing there? I have a garage." However, he did not specify where his garage was located, nor did he deny that the items he bought from Norman were in his possession at the time of the hearing in Taunton.

Jebie C. Butler, a sister of the defendant and a witness in his behalf, testified that, on or about December 22, 1945, she was present when her brother bought some garage equipment from Norman and that it was "moved over to my garage." This witness, who testified in the absence of the defendant, stated that she lived in East Providence but she did not specify where her garage was located.

Following the hearing in Taunton hereinbefore mentioned, the plaintiff secured a writ of replevin, returnable to the seventh district court of this state, and, in company with two deputy sheriffs, went to the premises of the defendant's mother in East Providence to get his property and

found that "the stuff had been spirited away." The deputy sheriff who was to serve the writ testified that he, a fellow officer and the plaintiff were admitted to the premises by a "young lady", whom he described in general terms, and that they found none of the items mentioned in the writ. Although not certain, he pointed out the defendant's sister as the person who admitted them to the premises.

■■■■ The defendant contends that because the plaintiff made no demand on him for the return and restoration of the property he is, as a matter of law, not liable to the plaintiff. In every case of trover the determining question is whether the defendant has appropriated to his own use the chattel of another without the latter's permission and without legal right. Where a person comes into possession of a chattel rightfully and continues simply to hold it, a demand by the owner is necessary before there can be a conversion. In such a case, if a refusal follows the demand, there is proof of a conversion, as the person in possession of the chattel then, in contravention of the owner's right, retains it under a claim of right or exercises dominion over it. *Claflin* v. *Gurney*, 17 R. I. 185; *Nestle-Lemur Co.* v. *Corrigan*, 60 R. I. 312, 317, and cases cited.

The case is different where a person, after having knowledge of title and the right to possession in another, nevertheless exercises dominion over the chattel in exclusion or in defiance of the owner's rights. If the person thus in possession of the chattel gives the owner distinctly to understand that he will hold the chattel, or takes it upon himself to detain the chattel from the owner without cause, there is a conversion. In these circumstances, no demand by the owner upon such person is necessary as a prerequisite to the bringing of an action of trover. *Claflin* v. *Gurney, supra; Nestle-Lemur Co.* v. *Corrigan, supra.* See also *Donahue* v. *Shippee*, 15 R. I. 453, 455.

■■■ In the instant case there was ample evidence, if believed, for the trial justice to find that, at least after the hearing in the Massachusetts court, the defendant had ac-

tual knowledge of plaintiff's mortgage, of the items of personal property covered thereby, and of the provision therein against removing such property from the described premises without the mortgagee's consent in writing; and, further, that thereafter, notwithstanding such knowledge, he converted to his own use most of the property covered by the mortgage. The credibility of the witnesses was primarily a question for the trial justice to determine. He saw and heard them testify, an advantage which we do not have. On the conflicting evidence in the record before us we cannot say that he was clearly wrong on the issue of defendant's liability.

■ The defendant next contends that the damages are grossly excessive. An employee of the firm that sold to the plaintiff the items in question here, which firm dealt only in new automobile equipment, was allowed to testify, without objection from the defendant, both as to the price of each of those items when purchased and as to their respective fair market value, ordinary wear and tear excepted, at the time of the conversion in December, 1945. The total of the market value of the various items as testified to by this witness was about $1000.

The defendant, on the other hand, testified that the items which he received from Norman were in very poor condition, and that their fair market value at the time of purchase was not more than $150. The testimony of his sister on this point was to the same effect. The defendant therefore argues that no greater sum than $150 could be awarded to the plaintiff as damages.

Here again the conflicting evidence is subject to the test of credibility and the trial justice apparently believed the plaintiff's evidence. In his decision he said: "I think the defendant did not get all this property, but he got the bulk of it. The items he did not get were not of great value and did not enter into the transaction at all." On the basis of this finding of fact, he assessed damages for the plaintiff in

the sum of $531.88, including interest. In our judgment this award is clearly supported by the credible evidence.

The defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the decision.

*Fergus J. McOsker,* for plaintiff.
*Frank W. Golemba,* for defendant.