DECISION
This case was heard by the Court sitting without a jury on January 22 and 23, 1996. Decision is rendered herein.
Facts
A detailed review of facts that gave rise to this litigation follows. In late April or early May of 1991, defendant Bogosian and plaintiff Case entered into an agreement whereby Case was to install a replacement engine in a 1987 Chevrolet Blazer owned by Bogosian.[1] Case completed the installation on May 25, 1991. Bogosian did not respond to Case's request to pay the $1,200 due. On June 7, 1991, Case caused a certified letter demanding payment for the repairs and storage charges to be sent to Bogosian. (Plaintiff's Exhibit 1.) At the time the letter was sent, those charges amounted to $1,395. Id. The letter further provided that storage charges for the vehicle were accruing at a rate of fifteen dollars per day. Bogosian did not pay the requested amount.
At this point, the parties reached an impasse. Case refused to release the vehicle to Bogosian unless and until the outstanding charges (repair and storage) were paid. Bogosian refused to make such payment without being afforded an opportunity to inspect the automobile. In addition, Bogosian demanded that Case provide evidence as to the source of the replacement engine.[2] When neither party acceded to the other's demands, the vehicle remained in Case's possession.
On or about July 16, 1991, Case filed a voluntary Chapter 7 proceeding in the United States Bankruptcy Court for the District of Rhode Island. Case listed a claim for $1,395 on his Chapter 7 schedules, although he did not provide a description of the claim's nature. There is no evidence before this Court that the trustee ever pursued the claim.
In January, 1992, Case moved to Florida. He entered into an agreement with Norman Carpenter pursuant to which the latter agreed to store the vehicle. Bogosian was apparently unaware of this agreement and, on February 18, 1992, he filed a stolen vehicle report with the Warwick Police Department. (Plaintiff's Exhibit 4.) During the period that Carpenter possessed the vehicle, his wife drove it on at least one occasion. It was on this date, July 12, 1992, that Officer Mitchell Cournoyer of the West Greenwich Police Department observed Shelly Carpenter attempting to start the vehicle. When Officer Cournoyer discovered that the vehicle had been reported stolen, he had it towed to the West Greenwich Police Department.
After a discussion between the Carpenters and West Greenwich Police Chief Robert Andrews, Mrs. Carpenter was not charged with possession of a stolen vehicle. While Bogosian was notified that the vehicle had been located, it remained in the possession of the West Greenwich Police Department. Bogosian arrived at that department on July 13, 1992, seeking to reclaim the vehicle. He was told that he needed a letter of introduction from the Warwick Police Department. Bogosian obtained such a letter (Defendant's Exhibit L) and returned the following day. He was again denied access to the vehicle.
The reason for this denial lay in the dialogue then ongoing between Chief Andrews and Attorney Paul DiMaio. The latter advised Chief Andrews that Case was claiming a lien on the vehicle.[3] Chief Andrews was also advised that Carpenter was holding the vehicle for Case. Based on these conversations, Chief Andrews returned the vehicle to Carpenter on July 16, 1992.
On that same date, Case fired the initial salvo in the battle that this litigation has become. Case filed a complaint seeking $1,200 for repairs to the vehicle plus storage costs at a rate of $15 per day. On August 4, 1992, Bogosian answered by denying liability as well as asserting a counterclaim for breach of contract and conversion. Bogosian subsequently filed a third-party complaint for conversion against the Town of West Greenwich on October 26, 1992, and amended that complaint on November 9, 1992, to add a conversion claim against Norman Carpenter. Carpenter answered this complaint on November 12, 1992, denying liability and counterclaiming for storage charges accrued.
I. Case v. Bogosian
A. Effect of Bankruptcy Proceeding
Bogosian argues that any claim that Case may have had stemming from his work on the vehicle became property of his bankruptcy estate upon the Chapter 7 filing. As a result, Bogosian concludes, Case lacks standing to bring this claim. Case argues that when the trustee failed to pursue the claim, it was effectively abandoned and thus reverted to Case by operation of law.
Because the standing inquiry presents an issue separate and distinct from the merits of the underlying claim, it must be addressed first. See Blackstone Valley Electric Co. v. PublicUtilities Comm., 452 A.2d 931, 933 (R.I. 1982) ("standing involves a threshold inquiry into the parties' status before reaching the merits of their claims"). Under 11 U.S.C. § 541(a)(1), the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."[4] Causes of action and claims possessed by the debtor fall within this definition and thus qualify as property of the estate. United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 9 (1983); In re Geise, 992 F.2d 651, 655 (7th Cir. 1993).
Under 11 U.S.C. § 554, a trustee may abandon any property of the estate after notice and a hearing. Any property that is scheduled but not administered before the closing of the estate is deemed abandoned by operation of law. 11 U.S.C. § 554(c). In order for property to be abandoned in such a manner, however, it must be scheduled on the debtor's list of assets and liabilities.In re Vreugdenhill, 950 F.2d 524, 526 (8th Cir. 1991); In reRothwell, 159 B.R. 374, 377 (D. Mass. 1993); see also 4 Collier on Bankruptcy, ¶ 554.03 (1993) ("[a]bandonment presupposes knowledge'). If the property is deemed abandoned, it reverts to the debtor, who may pursue his rights under applicable state law.Roberts v. Pierce Const. Co., Inc., 624 So.2d 1009, 1012 (Ala. 1993).
Bogosian argues that the claim was never abandoned and thus Case has no standing to pursue it. The Court finds this contention to be without merit. While the nature of Case's claim against Bogosian is not listed in the bankruptcy schedules, the amount is clearly set forth. For whatever reason, the trustee chose not to pursue this claim. Upon the closing of the bankruptcy case, the claim is deemed abandoned by operation of law. As a result, the claim reverted to Case and he has standing to pursue it here.
B. Validity of Liens
The Court now turns to the merits of the plaintiff's attempt to foreclose on the liens alleged to be outstanding on the vehicle. Bogosian disputes the validity of the liens claimed by Case. The statutes relevant to the parties' arguments follow.
 Under G.L. 1956 (1995 Reenactment) § 34-32-1:
 No person shall attach or cause a lien to be levied upon any motor vehicle for money due for repairs to the motor vehicle in an amount exceeding an authorization signed by the owner indicating the cost of the repairs.
G.L. 1956 (1995 Reenactment) § 34-35-1 provides:
 Whoever has a lien for money due him or her on account of work or labor, care and diligence, or money expended on or about personal property or for storage of personal property or has a lien therefor on account by reason of any contract expressed or implied, if the money is not paid within thirty (30) days after demand in writing delivered to the owner or one of the owners or left at his or her usual place of abode, if within this state, with some person living there, or made by letter mailed to him or her at his or her usual post office address outside the state, may apply for an order for the sale of the property in satisfaction of the debt by civil action in the superior court for the county where the plaintiff or one of the plaintiffs resides.
Finally, under G.L. 1956 (1995 Reenactment) § 5-38.3-3(iii):
 A customer may not be charged for storage or automotive repair unless notice in writing is given. Notice may be given by a statement on an estimate or other document given to the customer, by letter or by other written means which gives the customer actual notice. Storage may not be charged during the period from which the customer has authorized repairs to one business day after the repair shop has notified the customer to pick up the repaired vehicle.
The parties disagree over the effect of these statutes. Bogosian contends that where there was no written authorization, § 34-32-1 prohibits Case from imposing a lien on the vehicle. Bogosian makes a similar argument under § 5-38.3-3(iii), suggesting that the lack of written notice of storage charges precludes their recovery.
Alternatively, Case contends that he may recover in full under § 34-35-1. Specifically, Case argues that even if § 34-32-1
forecloses his attempt to recover on the $1,200 repair costs, the statute is noticeably silent on the issue of storage costs. Case concludes that storage costs may thus be recovered because the mandate of § 5-38.3-3(iii) has been met by the June 7, 1991, letter sent to Bogosian.
The language of § 34-32-1 is clear and unambiguous: where there is no written authorization signed by the owner of the motor vehicle, there can be no lien imposed. Case does not attempt to argue that the agreement was anything other than oral; rather he relies on the language of § 34-35-1. This reliance is misplaced.
Section 34-35-1 provides for the enforcement of common law and contractual liens. The statute merely serves to enhance these types of liens, providing a method for their satisfaction. In reDiPasquale, 105 B.R. 187, 190 (D. R.I. 1989). In the instant case, the plaintiff has neither a common law nor contractual lien for repairs to the vehicle. Therefore, § 34-35-1 does not authorize Case to claim a lien for repair costs.
Case also attempts to recover storage charges for the vehicle. Case argues that § 34-32-1 does not prohibit placing a lien on a motor vehicle for storage charges and thus such charges are properly recoverable under § 34-35-1. As noted earlier, however, § 34-35-1 does not create new liens but merely serves to enhance existing common law and contractual liens, providing a method for their enforcement. If no lien exists, the statute will not aid the plaintiff's cause.
Case does not contend that the storage charges were imposed by contract. Therefore, for a lien for such charges to attach, it must do so under the common law. While Rhode Island has not previously addressed the issue, the great weight of authority rejects such a conclusion. See Alabama Farm Bureau MutualCasualty Co. v. Lyle Service Ambulance-Wrecker, 395 So.2d 90, 93 (Ala. App. 1987) (no common-law lien for towing or storage charges); Capson v. Superior Court, 677 P.2d 276, 278 (Ariz. 1984) (same); Candler v. Ash, 372 N.E.2d 617, 619 (Ohio App. 1976) (same); see also 38 Am.Jur.2d Garages, and Filling andParking Stations, § 144 (1968 Supp 1995) (noting majority rule that no lien attaches under common law for storage of motor vehicles).
Accordingly, the Court finds that Case does not possess a valid lien for either motor vehicle repair charges or storage charges.
II. Carpenter v. Bogosian
A. Storage Charges
Carpenters claim against Bogosian for storage charges is entirely derivative of Case's claim of the same nature. Carpenter seeks to recover based on the common-law lien for storage charges. As noted previously, however, automobile storage charges do not give rise to a lien at common law. As a result, Carpenter's claim must fail.
III. Bogosian v. Case
A. Conversion Claim
Bogosian seeks recovery from Case on a theory of conversion of the automobile. In support of this claim, Bogosian relies onTerrien v. Joseph, 73 R.I. 112, 53 A.2d 923 (1947) andNestle-Lemur Co. v. Corrigan, 60 R.I. 312, 198 A. 360 (1938).Terrien is instructive in noting that "the determining question is whether the defendant has appropriated to his or her own use the chattel of another without the latter's permission and without legal right." 73 R.I. at 115, 53 A.2d at 925; see also 18 Am.Jur.2d Conversion § 1 (1985 Supp. 1995). The question then becomes whether Case had a legal right to retain possession of Bogosian's automobile when the latter did not pay the money due.
The Court has previously determined that Case did not have a valid lien on the vehicle. As a result, he had no right to retain possession.[5] He is therefore liable to Bogosian for conversion of the vehicle. See Heneghan v. Cap-A-Radiator, 506 N.Y.S.2d 132, 134-35 (N.Y. Sup. Ct. 1986) (operators of repair shop who did not have possessory lien converted automobile by refusing to return it to owner unless repair charges were paid);Candler, 372 N.E.2d at 619 (garage keeper with no valid lien for storage and towing charges wrongfully converted automobile by refusing owner's demand to deliver possession).
Damages for conversion are measured by the fair market value of the property at the time it was converted. Goodbody Co., Inc.v. Parente, 116 R.I. 437, 439 n. 2, 358 A.2d 32, 33 n. 2 (1976);Jeffrey v. American Screw Co., 98 R.I. 286, 291, 201 A.2d 146, 150 (1964). Upon payment of that amount, the defendant acquires title to the property. Restatement (Second) of Torts § 222A cmt. c. This procedure is often referred to as a "forced judicial sale" of the property. Id.
In his complaint, Bogosian seeks damages for depreciation, cost of substitute transportation, insurance costs, and legal fees. In addition, Bogosian seeks replevin of the vehicle. This "kitchen sink" approach toward pleading damages finds no support in either statute or case law. Essentially, he seeks a double recovery: possession of the vehicle plus its fair market value at the time of conversion. Bogosian's wish list does not end with this request, however, as he seeks damages for costs he deems attendant to the conversion.
Under the law of conversion, Bogosian is entitled only to the fair market value of the vehicle at the time it was converted.[6] Determination of this figure is complicated by the fact that Defendant's Exhibit M represents the vehicle's value as of January, 1995. The vehicle was converted in May, 1991. Bogosian, apparently recognizing his error, has attached a copy of the City of Warwick's Motor Vehicle Master List from February 1991 to his post-trial memorandum, labeling it Exhibit M-1.[7] Bogosian's attempt to prove the 1991 value of the vehicle by introducing the 1995 NADA guide leaves the Court without competent evidence to determine the fair market value of the property converted.
In the absence of any evidence as to the fair market value of the vehicle in 1991, it is necessary to reopen this case for the sole purpose of accepting such evidence. Bogosian will have the burden of producing competent evidence on the issue, specifically, a copy of the NADA price guide in effect at the time of the conversion. Thereupon, the defendants are entitled to challenge the admission of such evidence or counter with evidence contrary thereto.
In light of the conversion damages to be awarded, replevin is not an option available to Bogosian. See 18 Am.Jur.2d Conversion,
§ 145 "an action for conversion is for the recovery of damages an specific articles may not be recovered in such an action"); cf.Suffield Bank v. LaRoche, 752 F. Supp. 54, 63 (D. R.I. 1990) (where plaintiff elected to pursue money judgment on debt, it waived its right to acquire and sell collateral securing debt).
Bogosian's attempt to recover damages he deems attendant to the conversion must also fail. A request for damages due to depreciation is properly made in an action claiming trespass to chattels. See generally Restatement (Second) of Torts §§ 217-222 (discussing damages recoverable in trespass to chattels action). Bogosian chose to bring his claim as a conversion action, however, and therefore depreciation damages are not recoverable here.
Damages for substitute transportation are similarly unrecoverable in conversion actions. See 89 C.J.S. Trover andConversion § 179 (1955 Supp. 1995). Bogosian's request for damages of this nature is therefore denied.
Finally, the plaintiffs request for reimbursement of insurance premiums must be denied for two reasons. First, such payments are not within the scope of damages recoverable in conversion. Second, even were such damages recoverable, Bogosian's conduct in incurring these costs runs contrary to the duty of mitigation imposed by law. See Rusoff v. O'Brien,99 R.I. 153, 159, 206 A.2d 209, 212 (1965). Bogosian has failed to present any evidence which would justify maintaining insurance coverage on a vehicle out of his possession for such an extended period of time.
Bogosian also seeks recovery for legal fees expended in his attempt to regain possession of the vehicle. He cites no authority providing for such recovery. The general rule on this issue, as stated in 18 Am.Jur.2d Conversion § 120, is that
 in the absence of any contractual or statutory liability therefor, attorneys' fees and expenses incurred by the plaintiff, or which the plaintiff is obligated to pay, in the litigation of his claim against the defendant are not recoverable as an item of damages in an action for the conversion of personal property.
This position is consistent with the Rhode Island rule that attorneys' fees are not recoverable in the absence of contractual or statutory authority. See Newport Yacht Management, Inc. v.Clark, 567 A.2d 364, 366 (R.I. 1989).
Bogosian does not attempt to argue that recovery of attorneys' fees was agreed to by contract. Nor does any statutory authority exist to justify the award of attorneys' fees in this situation. Accordingly, Bogosian's request for such fees is denied.
IV. Bogosian v. Carpenter
A. Conversion Claim
Bogosian also states a conversion claim against Carpenter. Under the Restatement (Second) of Torts § 230, however,
 a bailee, agent, or servant who receives the possession of a chattel for storage, safekeeping, or transportation on behalf of his bailor, principal, or master, is subject to liability for conversion if, but only if, he does so with knowledge or reason to know that a third person has the right to immediate possession of the chattel.
The Court finds that when Carpenter accepted possession of the vehicle from Case, he did not know or have reason to know that Case had an invalid lien and that Bogosian had a right to immediate possession. As a result, Carpenter is not liable for conversion.
V. Bogosian v. Town of West Greenwich
A. Conversion Claim: Application of Public Duty Doctrine
Bogosian also seeks recovery from the third party defendants on a theory of conversion. Under his theory, those defendants incurred liability by wrongfully retaining possession of the vehicle for a period of three days and subsequently returning the vehicle to Norman Carpenter. The third party defendants argue that Bogosian's claim is barred by the public duty doctrine. Bogosian responds by arguing that the "special duty" exception to that doctrine applies.
 Under G.L. 1956 (1985 Reenactment) § 9-31-1,
 The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in 9-1-25, hereby be liable in all actions of tort in the same manner as a private individual or corporation; Provided, however, That any recovery in any such action shall not exceed the monetary limitations thereof set forth in the chapter.
The Rhode Island Supreme Court has previously commented that the purpose of this statute, "out of which the public duty doctrine evolved, is `to provide effective relief for persons injured as a result of governmental negligence.'" Verity v.Danti, 585 A.2d 65, 66 (R.I. 1991) (quoting Catone v. Medberry,555 A.2d 328, 333 (R.I. 1989)). Indeed, the overwhelming majority of reported cases under § 9-31-1 have involved negligence claims.
Bogosian's claim against West Greenwich is for conversion, an intentional tort. The issue, therefore, is whether the statute applies. In Mesolella v. City of Providence, 508 A.2d 661 (R.I. 1986), the Court determined that the broad language of § 9-31-1 was meant to abrogate immunity "for all torts," not just negligence claims. Id. at 66 (emphasis in original). As a result, the town is not immune from Bogosian's suit for conversion of the vehicle.Cf. Marrapese v. State of Rhode Island, 500 F. Supp. 1207, 1217 (D. R.I. 1980) (noting § 9-1-31's broad language in finding of waiver of governmental immunity to extend to federal, as well as state, tort suits).
This determination does not end the inquiry, however. "The issue of sovereign or governmental tort immunity is distinct from the issue of tort liability, so removing immunity does not automatically give rise to liability." 57 Am.Jur.2d Municipal,County, School, and State Tort Liability, § 4 (1988). Liability in the civil context is legal responsibility for the action taken, while immunity is freedom from liability based on the status of the defendant. Id.
In order to recover in his conversion action, Bogosian must prove that the town "appropriated to [its] own use the chattel without [Bogosian's] permission and without legal right."Terrien, 73 R.I. at 115, 53 A.2d at 925.[8] The Court finds that Bogosian has failed to make that showing in this case. In short, the town was a bit player in the convoluted series of events that gave rise to this litigation. Bogosian's attempt to recover against West Greenwich has more to do with the depth of the town's pockets than the extent and alleged culpability of its actions. Bogosian's claim against the town is denied.
With respect to all of the above, counsel shall prepare the appropriate order for entry.
[1] The fair market value of the vehicle in May of 1991 is not clear from the evidence introduced at trial. Defendant's Exhibit M, the 1995 NADA Appraisal Guide, lists the vehicle's retail value at $6,400.
[2] Bogosian apparently was concerned that the replacement engine may have been stolen, although no proof of this fact was produced at trial.
[3] It was unclear from the evidence exactly when Case returned to the jurisdiction.
[4] This section excludes several types of property from the estate. Those exclusions are not applicable in the instant matter.
[5] Case's good faith belief that he had a right to retain possession under the claimed lien does not absolve him of liability. Donahue v. Shippee, 15 R.I. 453, 455, 8 A. 541, 542 (1887); see also 18 Am.Jur.2d Conversion § 3 ("a person may be liable for conversion even though he was reasonably mistaken in thinking the facts to be such as would give him a legal right to the goods").
[6] If a conversion plaintiff can prove bad faith on the part of the converter, punitive damages may be warranted. 18 Am.Jur.2dConversion § 114. There has been no showing of bad faith on Case's part. He possessed a good faith belief that a valid lien existed on the vehicle. While that belief does not shield him from liability for conversion, see note 5 supra, it does preclude the imposition of punitive damages.
[7] Without expressing an opinion on whether this document accurately reflects the vehicle fair market value in May of 1991, the Court notes that the document lists the vehicle's value at $8,325.
[8] The parties address the issue in the context of the public duty doctrine. While § 9-31-1 encompasses the waiver of governmental immunity for all torts, the public duty doctrine is an element of the statute that applies only to negligence cases. Because Bogosian's claim against the town involves an intentional tort, the doctrine is inapplicable in this case.