**Joseph DeCHRISTOFARO et al.**

v.

**Edward W. MACHALA d.b.a. Bryik Builders.**

**No. 94–558–Appeal.**

Supreme Court of Rhode Island.

Nov. 15, 1996.

Amato DeLuca, Providence, Miriam Weizenbaum, Pawtucket, for Plaintiff.

Lauren Jones, Raymond Pezza, Providence, for Defendant.

## OPINION

LEDERBERG, Justice.

This matter came before the Supreme Court on the appeal of the defendant, Edward W. Machala d.b.a. Bryrik Builders, from a judgment entered by the Superior Court upon jury verdicts in favor of the plaintiffs, Joseph and Cherubina DeChristofaro, who brought claims for breach of contract, conversion, and punitive damages. On appeal, the defendant challenged (1) the submission of the conversion and punitive-damages claims to the jury, (2) the exclusion of statements made by the plaintiffs in the course of other litigation arising from the same house-construction project, (3) the admission of expert testimony regarding costs of construction of the house, and (4) the admission into evidence of a compilation of invoices and payments related to the construction. For the reasons stated below, we reverse the trial court's denial of the defendant's motion for a directed verdict on the conversion count and vacate the award of punitive damages but otherwise affirm the judgment of the Superior Court. The facts and procedural history pertinent to this appeal follow, with additional facts presented in the legal analysis of the issues.

### Facts and Procedural History

In April 1988, plaintiffs purchased a partially finished house in East Greenwich, Rhode Island, and on May 27, 1988, signed a contract with defendant, who agreed to complete construction of the house by December 1988 for a sum not to exceed $317,000. The contract provided for payment by plaintiffs in the following installments: one-sixth within twenty days of the contract's effective date, one-sixth at the commencement of brick and masonry work, one-third upon completion of all plastering, and the final third at the closing.

The plaintiffs made the first two payments according to schedule. Controversy arose, however, concerning the third payment. The defendant sent plaintiffs an invoice in the amount of $107,911.67. The plaintiffs responded with a check in the amount of $98,776.67, which was $9,135 less than the invoice amount. The plaintiffs explained that they had taken a credit for amounts they had paid for certain kitchen appliances and electrical equipment. According to plaintiffs, defendant was obligated to pay for those items under the contract but had neglected to do so. The defendant took the position that plaintiffs' failure to pay the full amount of the installment was a breach of contract. The parties were unable to work out their differences, and on December 4, 1988, defendant abandoned the project.

On December 23, 1988, plaintiffs filed a complaint against defendant, alleging breach of contract and conversion, and requested punitive damages on the conversion count. The defendant counterclaimed, asserting that it was plaintiffs who had breached the contract. After more than five years of pretrial activity, trial was finally held on the parties' claims in February and March of 1994. At the close of evidence, defendant moved for a

directed verdict on the conversion count.[1] The trial justice denied the motion, finding the evidence sufficient to submit the claim of conversion to the jury.[2] The jury returned a verdict for plaintiffs in the amount of $250,000 for breach of contract and $50,000 for conversion. Relying on the jury's finding of conversion, the trial justice submitted the issue of punitive damages to the jury. The jury then returned a second verdict for plaintiffs, this time in the amount of $100,000 in punitive damages. The defendant's motion for a new trial and/or remittitur was denied, and defendant appealed to this Court, pursuant to G.L.1956 § 9–24–1.

### 1. Conversion and Punitive Damages

On appeal, defendant argued that the trial justice erred in denying defendant's motion for a directed verdict on the conversion count. The standard of review on a motion for a directed verdict is well settled: the trial justice, and this Court on review, considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. *Hoffman v. McLaughlin Corp.*, 675 A.2d 404, 405 (R.I. 1996). If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for a directed verdict must be denied, and the issues must be submitted to the jury for determination. *Id.*

The defendant argued that an action for conversion could not lie on the facts of this case. Essentially, defendant contended that plaintiffs were alleging a conversion of money and that an action for conversion of money could not be sustained in the absence of proof that defendant was under a duty to return or otherwise particularly to utilize specific, identifiable, and segregated money, which was not the case here. Absent such a duty, plaintiffs' only remedy was in contract. The plaintiffs did not dispute this general proposition of law but argued instead that testimony at trial established that defendant converted their tangible personal property, including building materials and hardware, and not merely money paid on the contract. This testimony coupled with supporting documentary evidence, according to plaintiffs, was sufficient to support a finding of conversion.

■ "[T]he gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." *Fuscellaro v. Industrial National Corp.*, 117 R.I. 558, 560, 368 A.2d 1227, 1230 (1977). The focus of inquiry is "whether [a] defendant has appropriated to his [or her] own use the chattel of another without the latter's permission and without legal right." *Terrien v. Joseph,* 73 R.I. 112, 115, 53 A.2d 923, 925 (1947).

■ In their complaint, plaintiffs alleged that defendant "unlawfully took and carried away certain tangible personal property items belonging to [plaintiffs], including, but not limited to, building materials and hardware, thereby converting and disposing of these items to his own personal use." At trial, plaintiffs adduced evidence tending to prove that defendant had, on several occasions, invoiced plaintiffs for items that were never installed in their house. Among the items allegedly charged to but never received by plaintiffs were cement blocks, bricks, gravel, doors, extension jambs, screens, and a jacuzzi. Some of these items, according to plaintiffs, were installed in defendant's home; other items simply remained unaccounted for. One of the invoices cited by plaintiffs as evidence of conversion was that for framing of the house, which, according to plaintiffs, never actually occurred. For each allegedly converted item, however, plaintiffs offered no actual evidence of ownership or of a possessory interest in the item at the time of the conversion or, for that matter, at any time thereafter. Rather, plaintiffs essentially argued that defendant systematically billed them for items called for under the contract,

---

1. On September 5, 1995, Rule 50 of the Superior Court Rules of Civil Procedure was amended. A directed verdict is now referred to as a "judgment as a matter of law."

2. The trial justice granted defendant's motion for directed verdicts on plaintiffs' claims of breach of warranty and unfair and deceptive trade practices.

and then failed to actually install these items in their house.

■ It has long been the law in Rhode Island that in order to sustain an action for conversion of personal chattels, a plaintiff must demonstrate an ownership or possessory interest in the property at the time of the conversion. *Larson v. Dawson,* 24 R.I. 317, 318, 53 A. 93, 94 (1902); *see also* 18 Am. Jur.2d *Conversion* § 2 at 146–47 (1985). A plaintiff must also identify the allegedly converted property with reasonable certainty, in order to render it capable of identification, for the purpose of determining whether the property in fact belonged to the plaintiff at the time of its conversion. *Larson,* 24 R.I. at 318, 53 A. at 94.

■ The plaintiffs in the instant case have altogether failed to show or even to allege facts demonstrating an ownership or possessory interest in the allegedly converted items. *Cf. Burras v. Canal Construction and Design Co.,* 470 N.E.2d 1362, 1368 (Ind. Ct.App.1984) (uncontroverted testimony established that keys, window screens, and garage-door opener taken by contractor belonged to the plaintiff). Although it is true that defendant was under a contractual obligation to install in plaintiffs' house items of the type allegedly converted, he was under no obligation to install the *specific* items allegedly converted to his own use. Presumably, had he installed items in his own house originally purchased on plaintiffs' account, and then bought identical items on his personal account and installed them in plaintiffs' house, his contractual obligations concerning those items would have been discharged. Although defendant's record-keeping practices were grossly inadequate, the mere entry of a record indicating that an item had been purchased for eventual installation in plaintiffs' home was not sufficient to convert plaintiffs' contractual right to have such an item installed into an immediate right to possession of the purchased item, interference with which would be actionable in tort. *Cf. Royce, Allen & Co. v. Oakes,* 20 R.I. 418, 420–21, 39 A. 758, 758–59 (1898) (in case of money had and received, remedy is in assumpsit or debt and not in tort). Having shown no more than that defendant charged them for items they never received, plaintiffs have failed to establish a claim for conversion.

The plaintiffs attempted to salvage their conversion claim by suggesting that defendant converted the money they paid on the contract. That this conversion claim played a role in the proceedings is evidenced by plaintiffs' closing arguments and the trial justice's charge to the jury. In closing argument, plaintiffs' counsel repeatedly stressed that defendant had taken plaintiffs' money and spent it on his own house, propounding, for example, "Where did the money go? The money went into his own house." The trial justice charged the jury on several occasions regarding the conversion of both "money" and "materials" and submitted the following interrogatory to the jury: "Do you find that the plaintiffs have proved by a fair preponderance of the evidence that the defendant converted monies and/or property of the plaintiff to the defendant's own use?"

■ Money, where specifically identifiable, is usually regarded as a form of property subject to conversion. 7 Stuart M. Speiser et al., *The American Law of Torts* § 24:6 at 717–18 (1990). This Court has held that the question of whether money can be the subject matter of an action for conversion generally depends on whether the defendant is under any obligation to deliver specific money to the plaintiff. *Larson,* 24 R.I. at 318, 53 A. at 94. Here the contract placed no obligation upon defendant to keep intact *in specie* the money paid by plaintiffs. As a result, title to this money passed to defendant "at once upon delivery, as the title to money ordinarily passes." *Id.* at 320, 53 A. at 94–95. The defendant remained free to spend the money as his own, without an obligation to segregate and return the specific money paid by plaintiffs or an obligation to expend that specific money, intact and not mingled with his own funds, for specified uses. In other words, the money belonged to defendant upon its delivery, and, consequently, he could not convert it.

■ The requirement that a plaintiff in a conversion action must demonstrate a property interest in specifically identified property preserves the historic distinction between

actions arising *ex contractu* and those arising *ex delicto*. *Orton v. Butler*, 2 Chit. 343 (1822). In that case, Chief Justice Abbot of the Court of King's Bench explained:

"[P]arties should not be permitted, by their own invention, to convert that which from the earliest times has been considered as peculiarly the subject of *assumpsit* or debt, into an action of *tort*. We are to look with jealousy at any innovation of that kind, so that nothing like a precedent shall be established, tending to destroy those sound distinctions which have been established by the wisdom of our ancestors." *Id.* at 346.

The plaintiff in *Orton*, like plaintiffs in the instant case, sought to characterize a mere breach of contract as a conversion. Justice Best concurred in *Orton*, pointing out: "There is a broad distinction between causes of action arising *ex contractu* and *ex delicto*. This is one arising *ex contractu*; there is no wrong stated, but merely a breach of contract, and the plaintiff is not at liberty to convert a mere matter of contract into a *tort*." *Id.* at 349–50. This Court, relying on the aforesaid reasoning, has long recognized the distinction between an action for money had and received—which is a species of contract action—and a tort action. In *Royce, Allen, & Co.*, we commented that:

"It has never been [the law] in this State that a tort action could be maintained for money had and received, even though the person receiving the same has negligently and fraudulently refused to pay over the same to the person to whose use it was received, or has even converted it to his own use; except, at any rate, as provided by statute, after the commencement of a criminal prosecution. Gen. Laws R.I. cap. 233, § 16. On the contrary, the understanding has always been that assumpsit or debt are the only actions that can be employed in such cases; and we think this position is clearly in accordance with the well settled rules relating to common law actions." 20 R.I. at 421, 39 A. at 759.

This reasoning, we believe, applies with equal force to plaintiffs' effort to maintain an action for conversion on facts demonstrating only a breach of contract.

Consequently, we hold that plaintiffs have failed as a matter of law to meet their burden of offering evidence sufficient to establish a *prima facie* case of conversion. Thus, the trial justice erred in failing to direct a verdict in favor of defendant on the conversion count. Therefore, the judgment entered on the conversion count is hereby vacated. It follows from this conclusion that the punitive-damages award must also be vacated insofar as the award was based on the jury's finding of conversion, absent which plaintiffs have offered no basis for punitive damages.

## 2. Exclusion of Evidence of Plaintiffs' Other Lawsuits

At the beginning of trial, plaintiffs moved *in limine* to exclude evidence of their four other lawsuits arising from the same house-construction project. These lawsuits involved disputes with the original builder and with contractors engaged to perform electrical, heating and plumbing, and landscaping services. The plaintiffs argued that evidence of these other lawsuits was irrelevant and immaterial to the case at bar. The defendant contended that these other suits were relevant to the instant case essentially because they were similar: each involved the same house, a dispute with a contractor, and claims of breach of contract, nonpayment, and unworkmanlike construction. The defendant maintained that the jury should hear the whole story of the construction and resulting litigation and not merely the instant dispute involving defendant. He also suggested that plaintiffs' credibility in the instant case might be affected by prior inconsistent statements made in the other cases.

The trial justice ruled that defendant had failed to establish that the proffered evidence constituted a plan within the meaning of Rule 404(b) of the Rhode Island Rules of Evidence. He also ruled that evidence of the other suits was not relevant under Rule 401 of the Rules of Evidence and that such evidence was at any rate unfairly prejudicial under Rule 403. In response to concerns expressed by defendant, the trial justice noted that litigants in the other cases could be called as material witnesses in the instant

case, provided they did not testify regarding the other lawsuits.

On appeal, defendant argued that the trial justice erred by failing to allow defendant to introduce evidence of plaintiffs' other lawsuits as affirmative evidence of a plan under Rule 404(b), which provides:

"*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

■ In a case presenting a similar Rule 404(b) issue, an insurance company attempted to introduce evidence of the plaintiff's prior insurance claims as tending to establish a common scheme or design to defraud insurance companies. *Pickwick Park Ltd. v. Terra Nova Insurance Co.*, 602 A.2d 515, 519 (R.I.1992). We concluded that, for the evidence to be admissible under Rule 404(b), the insurer was required to show "by way of an offer of proof that the prior claims are relevant to an issue other than character and are sufficiently similar to the claim at issue." 602 A.2d at 519. In addition, this Court held that the probative value of the evidence must not be substantially outweighed by its prejudicial effect and that the other requirements of Rule 403 must be satisfied. 602 A.2d at 519. We are of the opinion that similar considerations apply in the case before us.

In his brief, defendant argued that plaintiffs "bargained for a Ford but built a Cadillac, the luxury of which they paid for by seeking windfall awards from dismissed contractors." The argument made to the trial justice, however, was not so specific. Rather, defendant argued to the trial justice that the other lawsuits were similar to the instant case and that the jury should be apprised of the full scope of the litigation arising from the project. Although defendant hinted at the possibility that plaintiffs exaggerated their damages in one of the other lawsuits and sought recovery for damages now claimed in the instant action, no offer of proof was made that could be characterized as describing a plan to exaggerate damages in multiple lawsuits or to collect the same damages multiple times.

In addressing defendant's "plan" argument, the trial justice stated:

"I don't see any relevance between the fact that subsequent contractors who have come into this home under contractual obligations or relations with this plaintiff who have sued this plaintiff or have been sued by them in any way shows any type of a common scheme or plan. If it is, what is it a plan to do? It's not a plan to defraud an insurance company. It's not a plan to overburden the courts with litigation. If anything it may show that the persons by disposition may be litigious."

As the trial justice observed, the evidence actually offered by defendant tended to show, if anything, only that plaintiffs "by disposition may be litigious." This, however, is precisely the type of character evidence Rule 404(b) was designed to exclude. We conclude, therefore, that the trial justice did not abuse his discretion in prohibiting defendant from pursuing his plan theory under Rule 404(b). *See Pickwick Park Ltd.*, 602 A.2d at 519.

■ The defendant also complained on appeal, however, that the trial justice erred by preventing him from impeaching plaintiffs' credibility with admissions from plaintiffs' pleadings in the other lawsuits. Pleadings in a prior case may be admitted against the filing party in a subsequent trial on the basis that such pleadings constitute an admission by a party-opponent. *Atlantic Paint & Coatings, Inc. v. Conti*, 119 R.I. 522, 528–29, 381 A.2d 1034, 1037 (1977). "[A] party who asserts contradictory claims in separate and distinct civil actions assumes the risk that those inconsistencies may be used to impeach the individual's credibility." *Cannone v. New England Telephone & Telegraph Co.*, 471 A.2d 211, 213 (R.I.1984). Admissions from a prior case are, of course, open to explanation by the party against whom they are offered. *Atlantic Paint &*

*Coatings, Inc.,* 119 R.I. at 529, 381 A.2d at 1037.

■ The defendant argued that by granting plaintiffs' motion *in limine* to exclude evidence of other litigation, the trial court in effect ordered a "blanket exclusion" of plaintiffs' prior pleadings and admissions from the other lawsuits, even for impeachment purposes. A blanket exclusion of such potential impeachment evidence would, no doubt, have constituted reversible error. We do not, however, interpret the trial justice's ruling as excluding the use of pleadings and admissions from the other lawsuits for impeachment purposes. Rather, we interpret the trial justice's ruling as barring the affirmative use of such evidence to establish a plan under Rule 404(b), but not to foreclose the possibility of impeaching plaintiffs with their own admissions from other lawsuits. Indeed, defense counsel clearly viewed his impeachment options as left open when he cross-examined plaintiffs.

■ The defendant cited only one instance at trial when his attempted impeachment of plaintiffs based on an admission from another lawsuit was actually precluded by the trial justice.[3] During cross-examination of plaintiff Cherubina DeChristofaro, defense counsel asked whether she had been "generally satisfied" with work performed by Emma Brothers Plumbing (Emma). Mrs. DeChristofaro responded affirmatively. Defense counsel then began to question Mrs. DeChristofaro about a statement made by her under oath on May 5, 1992, regarding Emma's performance. Counsel for plaintiffs objected, arguing at sidebar that the trial justice's granting of the motion *in limine* precluded inquiry into plaintiffs' lawsuit with Emma. Defense counsel indicated that Mrs. DeChristofaro, in apparent contradiction of her testimony on the stand, had in the earlier sworn statement expressed dissatisfaction with plumbing and heating work performed by Emma. Defense counsel also announced his intention to ask Mrs. DeChristofaro

whether she was generally satisfied with electrical work performed by Stockslager Electric Company (Stockslager). According to defense counsel, in a prior statement made in a lawsuit in which Stockslager was the plaintiff, Mrs. DeChristofaro had stated, "I categorically deny that plaintiff's work was good quality." The trial justice ruled that the prior statements were not "relevant enough to attack [Mrs. DeChristofaro's] credibility," that questioning of Mrs. DeChristofaro regarding the prior statements would confuse the jury, and that the prejudicial impact of the prior statements would far outweigh any probative value they might have.

We have not been provided with Mrs. DeChristofaro's prior statements that defendant attempted to use for impeachment. Nonetheless, the transcript referred to the prior statements in sufficient detail to permit appellate review. The defendant's impeachment strategy apparently was to demonstrate that Mrs. DeChristofaro was seeking damages in the instant case that she had previously attributed to Emma and Stockslager. There can be little question that such inconsistencies in plaintiffs' assignments of liability in the various lawsuits constitute appropriate material for impeachment of plaintiffs' credibility. *See Cannone,* 471 A.2d at 213. At the sidebar conference, however, plaintiffs' counsel argued that plaintiffs had not in fact made any claims against defendant that were previously made against Emma and Stockslager, a point that defendant did not dispute. The plaintiffs' counsel also observed that defense counsel had already questioned Mr. DeChristofaro at great length during the earlier cross-examination about problems with the work performed by Emma and Stockslager.

■ Although we are of the opinion that it was error for the trial justice to preclude permissible inquiry into other actions and into sworn statements from interrogatories, given the imprecise nature of defendant's

---

**3.** The defendant also argued that the trial justice unfairly restricted his cross-examination of Mr. DeChristofaro. A review of the record, however, revealed that the trial justice merely enforced his earlier ruling on the motion *in limine* by precluding defendant from cross-examining Mr. DeChristofaro about the existence of other lawsuits. The defendant did not attempt to impeach Mr. DeChristofaro's credibility with inconsistent statements from those lawsuits.

attempts to use this material to impeach Mrs. DeChristofaro, we deem such error to have been harmless.

### 3. Qualification and Testimony of Expert Witness Edgar Paxson

The defendant next contended that the trial justice erred in qualifying Edgar Paxson (Paxson) as an expert witness under Rule 702 of the Rhode Island Rules of Evidence. The qualification of an expert is a matter addressed to the sound discretion of the trial justice, and the exercise of that discretion will not be disturbed on appeal absent abuse. *Ferland Corp. v. Bouchard,* 626 A.2d 210, 215 (R.I.1993). This Court has traditionally afforded wide latitude to a trial justice's determination of the competency of an expert witness. *Id.*

Rule 702 permits a witness who is qualified "by knowledge, skill, experience, training, or education" to testify as an expert. At the time of trial, Paxson had more than twenty years of experience in residential construction, had been a registered architect in Rhode Island since 1978, had designed more than 1,400 residential units in multi-family dwellings, had inspected the provision of labor and materials for approximately 70 percent of those units, and had designed twelve single-family dwellings and been responsible for inspection of labor and materials for one of them. In addition, he was intimately familiar with the condition of plaintiffs' house at the time of abandonment and during the construction by other contractors thereafter. The trial justice indicated that expert testimony on technical matters of construction would be of assistance to the trier of fact. Given Paxson's more than adequate credentials and the need for expert testimony, we conclude that the trial justice did not abuse his discretion in permitting Paxson to testify as an expert.

The defendant also contended that Paxson's testimony regarding the value of the work done by defendant and the cost of completing the house after defendant's abandonment was not supported by legally sufficient facts. "Unquestionably, an expert's opinion must be predicated upon facts legally sufficient to form a basis for his con-clusion." *Alterio v. Biltmore Construction Corp.,* 119 R.I. 307, 312, 377 A.2d 237, 240 (1977); *see* Rule 705 of the Rhode Island Rules of Evidence. The facts upon which an expert opinion is based must be specifically set forth; otherwise it is impossible to assess whether the conclusions drawn from the facts possess sufficient probative force or, rather, are grounded in mere speculation or conjecture. *Alterio,* 119 R.I. at 313, 377 A.2d at 240.

After a thorough review of the record, it is our opinion that Paxson's conclusions were sufficiently supported by facts and data. Paxson testified in great detail about the condition of the house at the time of abandonment. He cited numerous deficiencies in defendant's performance, with photographic evidence as support, and described the remedial measures necessitated by these deficiencies. He testified that he had observed the work done to complete the house and was familiar with the materials being used. He further testified that relying on his personal knowledge of the construction of the house and his knowledge as an expert of the costs of labor and materials in residential construction, he could assert that the amounts paid by plaintiffs in completing their home after defendant's abandonment were fair and reasonable. All the bills and invoices for which plaintiffs sought compensation, and which Paxson testified were fair and reasonable, were admitted into evidence and were available to defendant for cross-examination purposes. Given this ample factual basis, Paxson's expert opinion clearly satisfied evidentiary requirements.

### 4. Admission into Evidence of Exhibit No. 11

Finally, defendant argued that the trial justice erred in admitting into evidence exhibit No. 11, a bound compilation of photocopies of invoices and checks about which Mr. DeChristofaro testified at length and identified as a record of the bills received and payments made by plaintiffs in completing construction of the house under the terms of the contract after defendant had abandoned the project. Paxson testified that

the bills and invoices in exhibit No. 11 reflected the fair and reasonable cost of labor and materials to complete construction of the house under the terms of the contract.

We have previously stated that "a bill for repairs unsupported by testimony cannot prove itself and is therefore inadmissible to prove the existence of the alleged defects or the cost of repairing them." *Alterio,* 119 R.I. at 311, 377 A.2d at 239. Such bills may be admissible, however, in circumstances in which an expert testifies that the repairs were necessary and the costs reasonable. *Id.* In particular, we have upheld the admission of a repair bill that was supported by expert testimony and "itemized in detail the repairs to plaintiff's car and the cost of each item." *Krasnoff v. Flynn,* 97 R.I. 129, 131, 196 A.2d 158, 159 (1963). The instant case is indistinguishable. Exhibit No. 11 sets out in itemized detail every expenditure the plaintiffs claimed to have made in completing construction of their house under the terms of the contract, and Paxson testified that the costs reflected in the exhibit were fair and reasonable. Consequently, the trial justice did not abuse his discretion in admitting exhibit No. 11 into evidence.

In summary, therefore, the defendant's appeal is sustained in part and denied in part. We reverse the trial court's denial of the defendant's motion for a directed verdict on the conversion count, vacate the award of damages for conversion, vacate the award of punitive damages, and otherwise affirm the judgment of the Superior Court, to which we remand the papers in this case.