DECISION
This matter is before the Court on Defendant's Motion for Summary Judgment. This Court has jurisdiction pursuant to Rule 56 of the Rhode Island Superior Court Rules of Civil Procedure.
 Facts
Defendants, Rolling Green Associates and Community Planning and Development Associates own and operate an apartment complex in Newport, Rhode Island. The Plaintiff's all reside in said complex. In the very early morning hours of January 8, 1994, there was a snowstorm and Plaintiffs' cars were, at the request of Rolling Green Associates, towed from their spots on the private street owned by the complex. The Plaintiffs' complain that this action was taken without notice. The Plaintiffs were held responsible for payment to the towing company in exchange for the return of their vehicle. Plaintiffs have asserted claims for both the tow and storage costs and the loss of use, inconvenience, distress and humiliation they suffered. Plaintiffs have received notices in the past reminding them of the "snow policy" with regards to parking cars in the back parking lot rather than the street so that the roads can be effectively plowed.
 Smumary Judament
Rhode Island Super. R. Civ. Proc. 56, governing summary judgment requires a trial justice to determine the necessity of trial by identifying a genuine issue of material fact in dispute.Rotelli v. Catanznra, 686 A.2d 91 (R.I. 1996). To avoid summary judgment, the party opposing the motion cannot rest upon conclusions or mere allegations or denials in the pleadings; rather, the party must affirmatively set forth competent evidence that raises a genuine issue to be resolved. Sisters of Mercy ofProvidence, Inc. v. Wilkie, 668 A.2d 650, 652 (R.I. 1996). A trial justice may properly grant summary judgment only when, after reviewing the evidence in light most favorable to the non-moving party, the trial justice concludes that no genuine issue of material fact exists and the moving party's claim warrants judgment as a matter of law. R.I. Super. R. Civ. P. 56(c); Harritos, et at. v. Cambio, et al., 683 A.2d 359 (R.I. 1996).
 Conversion
"[T]he gravamen of an action for conversion lies in the defendant's taking the plaintiffs personalty without consent and exercising dominion over it inconsistent with the plaintiffs right to possession." DeChristofaro v. Machala, 685 A.2d 258
(R.I. 1996) quoting Fuscellaro v. Industrial National Corp.,368 A.2d 1227, 1230 (R.I. 1977). The focus of the inquiry is "whether [a] defendant has appropriated to his [or her] own use the chattel of another without the latter's permission and without legal right" Terrien v. Joseph, 53 A.2d 923, 925 (R.I. 1947).
The Plaintiffs claim that the Defendant Rolling Green, in authorizing the removal of their vehicles from their places on the road, unlawfully exercised dominion over Plaintiffs' property. This Court finds the Plaintiffs' claim of conversion to lack merit. There is sufficient evidence in the record on which this Court can base a finding that the residents of Rolling Green apartments had sufficient notice of the parking policy in snowy conditions and, in fact, consented to the consequences for non-compliance. The depositions of the residents reveal that on more than one occasion in the past, the Association had posted notices reminding residents of the parking policy during a snowfall.[1] The residents were aware of the Association's policy of towing vehicles and had, at other times, complied with it by moving their vehicles to the back parking lot. The announcement/notice clearly states "all vehicles parked on the streets will be towed at the owner's expense." At no time did they question or challenge the Association's authority to authorize the towing of parked vehicles in the event of non-compliance with the snow policy. The Defendant, Rolling Green, authorized the towing of the vehicles to ensure adequate room for emergency and plowing vehicles should they be needed in the snow storm.[2] The Defendant had no intention of depriving the Plaintiffs' of their property for Defendants own use or profit.
The Plaintiffs also complained that the Defendants would not release their vehicles until the towing expenses were paid. The Court finds that this contingency was not unreasonable. "The defendant is not required to comply with a. demand made at an unreasonable time or place, or in an unreasonable manner. . . . even when the defendant has possession, a qualified refusal, for a reasonable purpose and for a reasonable length of time, is not a conversion." Prosser and Keeton on Torts (5th ed.) Chapter 3, § 15 (1984). It is neither unreasonable nor unusual that a towing company would retain the towed vehicles until such time as the expenses were satisfied More importantly however, the policy imposing the contingency of payment before release of the vehicles concerns the Defendant Oceanside Towing, not Rolling Green. Rolling Green neither had nor took possession of the vehicles belonging to the Plaintiffs.
Accordingly, the claim of conversion brought against Defendant Rolling Green, is hereby dismissed as a matter of law.
 Deceptive Trade Practice
In determining whether an action for deceptive trade practice exists, the Court must evaluate three elements.
 1) whether the act or practice offends public policy;
 2) whether the act or practice is immoral, unethical, oppressive, or unscrupulous;
 3) whether it causes substantial injury to consumers
The Plaintiffs, in addressing the first element rely on Halloranv. Spillane's Servicenter, Inc., 587 A.2d 177 (Conn. Super 1990). This case was a class action suit brought when cars were towed from private property where they were parked without permission of the owner. The plaintiffs' claims are all based on violations of their rights under the Connecticut Unfair Trade Practices Act (CUTPA) that are alleged to have been committed by the defendant in the operation of its business of removing wrongfully parked vehicles.
There are some important distinctions between the instant matter and Halloran. The plaintiffs in Halloran did not claim that the defendant had no right to take possession of the vehicles; rather, their claims relate to the "conduct at the defendant after the defendant acquired possession." Id. at 180. In the instant matter, the Plaintiffs challenge the maimer in which the vehicles were obtained. Plaintiffs' Memorandum InSupport of Their Objection To Defendants' Motion For SummaryJudement at 8. Furthermore, in Halloran the Plaintiffs were not given notice of the possibility that their cars could be towed. In the instant case, the Plaintiffs were on notice of the snow policy and the consequences of non-compliance. Had the Plaintiffs parked their cars in the back parking lot as they had done during prior snowstorms as required by the Association's policy, they would have driven away the next morning without incident. As the Plaintiffs had been put on notice and, in fact, complied with the policy in the past (without complaint), this Court is hard pressed to rule that the towing of the vehicles was against public policy. Had an emergency arisen and the rescue vehicles been unable to maneuver past the Plaintiffs' cars; or had Plaintiffs' cars been plowed in or damaged by snow plows, Defendant Rolling Green would be exposed to negligence claims. The court finds that none of the requisite elements of a cause of action for deceptice trade practice have been satisfied.
For the reasons stated, this Court grants the Defendants' Motion for Summary Judgment. The Parties shall submit the appropriate judgment.
[1] Deposition of John Pinheiro at 8.
 Q: "Okay, Before this past winter had you received notices about the towing policy?
 A: Oh, yeah, yeah.
 Q: Had anyone told you that the towing policy had changed?
 A: Nope. . . ."
Deposition of Rachel Abdullah at 7.
 Q: "From the time you moved in `86 up until February of `94 had you ever received any notices from Rolling Green about their towing policy in the snow?
 A. Couple. . . ."
[2] The record shows that a snow storm had been predicted and in fact, it had snowed heavily during the day.