A93A0206. ATLANTA CLASSIC CARS, INC. v. CHIH HUNG USA AUTO CORPORATION.

McMURRAY, Presiding Judge.

Chih Hung USA Auto Corporation ("Chih Hung") filed an action against Atlanta Classic Cars, Inc. ("ACC"), alleging conversion (Count 1), breach of trust (Count 2) and seeking attorney fees pursuant to OCGA § 13-6-11 (Count 3). Chih Hung later filed an amended complaint and alleged negligence (Count 4). The case was tried before a jury and the evidence revealed the following:

Chih Hung is a California corporation in the business of purchasing automobiles in the United States and exporting them to Taiwan. In 1988, Richard Carruthers contacted Chih Hung's purchasing agent, Paul Lia, in California and informed Lia that he is an automobile broker with "a pretty good relationship with Atlanta Classic Cars so he can get a better deal compared to any dealer." Thereafter, Chih Hung began purchasing a large percentage of its inventory from ACC through Carruthers, paying Carruthers commissions of about $500 per car. (Carruthers' duties involved negotiating the deal; financing was

between Chih Hung and ACC via letter of credit and wire transfer.)

During July 1989, Carruthers negotiated the purchase of five new Mercedes-Benz automobiles, apparently for his own use. The deal was closed on August 2, 1989, but Carruthers was then unable to pay $92,910 of the purchase price. Consequently, ACC held the five automobiles and pressured Carruthers for the remaining balance.

On August 28, 1989, Carruthers received a $90,000 check from Chih Hung payable to ACC for deposit on 18 new Mercedes-Benz automobiles. (The face of the check indicates "CHIH HUNG USA AUTO CORP" and includes the notation, "order fo[r] M-Benz 300 SEL.") Carruthers telefaxed Chih Hung a receipt bearing the logo, "ATLANTA CLASSIC CARS," and indicating credit for a $90,000 deposit on 18 automobiles.

On August 29, 1989, Carruthers contacted ACC and informed Kym Schumacher, ACC's comptroller, that he had the money to pay for the five cars. Schumacher gave Carruthers ACC's account number and authorized him to deposit the money directly into ACC's account. Carruthers made the deposit and later sent ACC a receipt indicating a deposit of $92,910. ACC then credited Carruthers for the balance owing on the five cars.

About five months later, Paul Lia telephoned ACC's sales manager, John Johnson, regarding the whereabouts of Chih Hung's 18 automobiles. Johnson informed Lia that ACC did not receive a deposit from Chih Hung for 18 new cars. Lia responded by sending Johnson telefax copies of the $90,000 ACC receipt and the $90,000 cancelled check. Notwithstanding, Johnson insisted that ACC did not receive the deposit and later discovered that the receipt had been forged.

During the next several weeks, Lia was unable to contact Carruthers, so he telephoned Johnson who then promised that Carruthers would return the $90,000. About two hours later, Carruthers telephoned Lia and explained the disposition of the money. Carruthers later reimbursed Chih Hung $30,000.

The jury returned a $90,000 verdict for Chih Hung, awarding $30,000 principal and $5,788 interest on the conversion claim (Count 1) and $30,000 principal and $5,788 interest on the breach of trust claim (Count 2). The jury also awarded $18,624 in attorney fees (Count 3), but returned no award for the allegation of negligence (Count 4). This appeal followed judgment on the verdict. *Held*:

1. ACC contends the trial court erred in denying its motion for directed verdict as to Count 1 of the complaint, arguing that ACC did not convert the property of Chih Hung.

" 'When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss.' OCGA § 23-1-14. This principle is applicable in conversion cases. See *Dealers' Discount Corp. v. Tram-*

*mell*, 98 Ga. App. 748 (106 SE2d 850) (1958)." *Benton v. Duvall Livestock Marketing*, 201 Ga. App. 430 (1) (411 SE2d 307).

In the case sub judice, there is no evidence that ACC was aware of Carruthers' scheme to dupe Chih Hung out of $90,000 and we find no evidence that ACC had reason to suspect that Carruthers misappropriated Chih Hung's money. However, it is undisputed that Carruthers was acting as Chih Hung's agent; that Chih Hung entrusted Carruthers with the $90,000 and that Chih Hung did not inform ACC of the order for 18 new cars or the $90,000 deposit. These circumstances are insufficient to sustain a finding that ACC was in any way responsible for the conversion of Chih Hung's money. See *Benton v. Duvall Livestock Marketing*, 201 Ga. App. 430 (1), supra. Consequently, the trial court erred in denying ACC's motion for directed verdict on Count 1 of the complaint. See *Lamb v. Decatur Fed. &c. Assn.*, 201 Ga. App. 583, 587 (3) (411 SE2d 527).

2. ACC contends the trial court erred in denying its motion for directed verdict as to Count 2 of the complaint, arguing that there was no evidence to authorize a finding of an implied (constructive) trust.

"A constructive trust 'is a remedial device created by a court of equity to prevent unjust enrichment.' *Lee v. Lee*, 260 Ga. 356 (2) (392 SE2d 870) (1990). It will be implied if the circumstances are such that the persons 'holding legal title to the property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity.' OCGA § 53-12-93 (a). 'A promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud. (Cit.)' *Middlebrooks v. Lonas*, 246 Ga. 720 (2) (272 SE2d 687) (1980)." *Eason v. Farmer*, 261 Ga. 675, 676 (2), 677 (409 SE2d 509).

In the case sub judice, there is no evidence that ACC was aware of Carruthers' fraudulent scheme to convert Chih Hung's $90,000. Further, we find no evidence that ACC knew or should have known that Carruthers was depositing Chih Hung's money into its account. Carruthers simply informed ACC's comptroller that he could pay the outstanding balance on the five cars purchased on August 2, 1989, and that he would deposit the money into ACC's bank account. These circumstances are insufficient to authorize a verdict based on an implied (constructive) trust. See *Eason v. Farmer*, 261 Ga. 675, 676 (2), supra. Consequently, the trial court erred in denying ACC's motion for directed verdict as to Count 2 of the complaint. See *Decatur Fed. Savings &c. Assn.*, 201 Ga. App. 583, 587 (3), supra.

3. In light of Divisions 1 and 2 of this opinion, we find insufficient grounds to sustain the jury's verdict as to attorney fees. We also find it unnecessary to address ACC's remaining enumeration of error.

*Judgment reversed. Pope, C. J., Birdsong, P. J., Cooper, John-son, Blackburn and Smith, JJ., concur. Beasley, P. J., and Andrews, J., concur in part and dissent in part.*

BEASLEY, Presiding Judge, concurring in part and dissenting in part.

1. As stated in the majority opinion, "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." OCGA § 23-1-14. It has also been held under this Code section that where one of two innocent parties must suffer loss through the fraud of another, the burden of the loss should be imposed upon him who most contributed to it. *Braselton Bros. v. Better Maid Dairy Prods.*, 113 Ga. App. 382, 385 (1) (148 SE2d 71), rev'd on other grounds, 222 Ga. 472 (150 SE2d 620) (1966). The court's jury charge in this case embodied these principles.

The jury was authorized to find that, by permitting Carruthers to deposit a check directly into its account and to designate its application to his own debt without ascertaining the identity or intention of the payor, Atlanta Classic Cars most contributed to the loss. By reposing trust, confidence, and control in Carruthers for this financial transaction, Atlanta Classic Cars appointed him its agent as to the check transaction and facilitated his perpetration of the fraud. This distinguishes *Benton v. Duvall Livestock Marketing*, 201 Ga. App. 430 (411 SE2d 307) (1991), cited by the majority. Since the jury by its verdict necessarily found that Atlanta Classic Cars most contributed to the loss, it follows that Atlanta Classic Cars would be unjustly enriched if allowed to retain the proceeds of the check as against Chih Hung's claim for return of its funds from their unintended diversion. *Eason v. Farmer*, 261 Ga. 675 (409 SE2d 509) (1991), cited by the majority, is thus also distinguished. Consequently, the award of the $60,000 to Chih Hung, which it had not been reimbursed by Carruthers, was supported.

2. Chih Hung challenges the award of attorney fees under OCGA § 13-6-11, although it does not challenge the award of interest. I agree that the attorney fee award is unsustainable under the facts of this case. There existed a bona fide controversy between Chih Hung and Atlanta Classic Cars as to which party is legally responsible for the loss. Consequently, Atlanta Classic Cars has not been stubbornly litigious or caused Chih Hung unnecessary trouble or expense. *Backus Cadillac-Pontiac v. Brown*, 185 Ga. App. 746, 747 (1) (365 SE2d 540) (1988). There is no evidence that Atlanta Classic Cars had knowledge of Carruthers' fraud, and it is therefore not chargeable with bad faith in the transaction out of which the lawsuit arose. Compare *City of Atlanta v. Murphy*, 194 Ga. App. 652, 653 (2) (391 SE2d 474) (1990).

I would therefore reverse the award of $18,624 in attorney fees.

The transcript shows that the jury intended to award Chih Hung the $60,000 it sought, plus $30,000 in interest and attorney fees, finding in favor of Chih Hung on all counts of the complaint. Upon instructions from the court that it had to apportion its verdict, the jury returned the verdict set forth in the final judgment. Since the evidence supports the jury's award of the $60,000 to Chih Hung, I would affirm the judgment insofar as it awards this total principal amount plus interest.

I am authorized to state that Judge Andrews joins in this opinion.

DECIDED JUNE 28, 1993 —
RECONSIDERATION DENIED JULY 30, 1993 — 

*Freisem, Swann & Malone, John A. Swann, C. Cyrus Malone III*, for appellant.

*Tobin & Hoffspiegal, Valerie G. Tobin, Thomas W. Tobin*, for appellee.