## In re AMARLITE ARCHITECTURAL PRODUCTS, INC., Debtor.

**Harry W. PETTIGREW, in his office and capacity as Trustee–in–Bankruptcy of Amarlite Architectural Products, Inc., Plaintiff,**

v.

## SOUTHERN ALUMINUM FINISHING COMPANY and Congress Financial Corporation (Southern), Defendants.

Bankruptcy No. A90–14068.
Adv. No. 94–6474.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 1, 1995.

Harry W. Pettigrew, Pettigrew & Trippe, P.C., Atlanta, GA, for trustee.

Rufus T. Dorsey, IV, Parker, Hudson, Rainer & Dobbs, Atlanta, GA, for Congress Financial Corp. (Southern).

H. Quigg Fletcher, Kilpatrick & Cody, Atlanta, GA, for Southern Aluminum Finishing Co.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is a joint motion for summary judgment filed by plaintiff, Harry W. Pettigrew, Chapter 7 trustee for Amarlite Architectural Products, Inc., and defendant, Congress Financial Corporation (Southern) ("Congress"). Plaintiff seeks a determination of the validity and priority of liens, claims or interests and that Congress is entitled to all funds presently held by the trustee pursuant to Congress' first priority security interest in the Amarlite inventory and its proceeds. Defendant, Southern Aluminum Finishing Company ("SAF") filed an answer, counterclaim and cross-claim claiming a superior interest and that the funds are being held in trust for its benefit. This is a core proceeding pursuant to § 157(b)(2)(K). The findings and conclusions of the court are set forth hereinafter.

## FACTS

Amarlite Architectural Products, Inc. ("Amarlite") was in the business of selling aluminum products for use in the construction industry. Congress is an asset based lender who provided certain terms and revolving financing to Amarlite. SAF is in the business of anodizing and painting fabricated aluminum products to be used in the construction industry. From time to time Amarlite engaged SAF to anodize certain items of Amarlite's inventory. On or about March 31, 1989, Amarlite granted to Congress a first priority security interest in all or substantially all of Amarlite's assets. Congress duly perfected its security interest in all existing and after acquired inventory, accounts receivable, monies, general intangibles and proceeds.

Amarlite filed its petition for relief under Chapter 11 on October 5, 1990. By order entered December 20, 1993, Amarlite's Chapter 11 case was converted to a Chapter 7 case. As of the date of conversion, Amarlite was indebted to Congress in the principal amount of $7,883,258.07, plus interest and fees.

Following conversion, the trustee sold certain items of Amarlite's inventory in SAF's possession upon which SAF had performed services. SAF was paid $46,593.54, which equalled the outstanding claim for services on each item of such inventory sold. The trustee placed the remaining proceeds received from this sale of the inventory in SAF's possession into an account designated "SAF/Trustee account."

On March 9, 1994, the trustee sold substantially all of Amarlite's equipment, inventory and general intangibles for the aggregate amount of $1,630,000. All of this inventory was in the possession of the debtor at the time of conversion and sale. Pursuant to the order of sale, the trustee placed $179,815 of the sale proceeds into an account designated "SAF/Trustee Sale Account" pending later determination of the competing interests of Congress and SAF. The proceeds in these two accounts are the subject of this action.

## DISCUSSION

Federal Rule of Civil Procedure 56, made applicable by Bankruptcy Rule 7056, provides for the granting of summary judgment if "... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "... might affect the outcome of the suit under the governing (substantive) law...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). A dispute of fact is genuine "... if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982); *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975).

■ In determining whether there is a genuine issue of material fact, the court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985); *United States v. Oakley,* 744 F.2d 1553, 1555 (11th Cir. 1984). The moving party must identify those evidentiary materials listed in Federal Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. *Coats & Clark,* 929 F.2d at 608.

Movants contend that Congress is entitled to all proceeds from the trustee's sale based upon Congress' first priority security interest in all of Amarlite's assets. To support this position, movants rely upon the affidavit of Jerry Corley, the custodian of records of Congress, and the undisputed fact that Congress holds a first priority security interest in all or substantially all of Amarlite's assets. The court finds the movants have sustained their burden of proof.

In response, defendant SAF contends that pursuant to O.C.G.A. 16–8–15 and the con-structive trust fund doctrine, Amarlite, as a materialman, is protected by Georgia's lien statutes and required to hold proceeds received from the sale of finished product in trust for the benefit of its suppliers, including SAF.[1] SAF further contends that the existence of a constructive trust for its benefit does not depend on whether SAF itself could have filed a lien, but rather on whether Amarlite would be subject to criminal penalty under O.C.G.A. § 16–8–15 if it received payment from its contractor/customer and failed to first pay SAF its share of those proceeds. Finally, SAF contends that the trust imposed on the portion of sale proceeds held by the plaintiff is not property of the estate and, therefore, is not subject to any claim or lien by any other creditor of the estate, including Congress.

■ The constructive trust fund doctrine is viable in Georgia, but its availability is limited to protect those persons entitled to file liens under the Georgia materialmen's lien laws. *Bethlehem Steel Corp. v. Tidwell,* 66 B.R. 932, 939 (Bankr.M.D.Ga.1986); *In re American Bldg. Consultants, Inc.,* 138 B.R. 1015, 1017 (Bankr.N.D.Ga.1992). A person claiming a lien must bring himself clearly within the law. *D.H. Overmyer Warehouse Co. v. W.C. Caye & Co.,* 116 Ga.App. 128, 129, 157 S.E.2d 68 (1967); *Georgia–Pacific Corporation v. Dan Austin Properties, Inc.,* 126 Ga.App. 191, 190 S.E.2d 131 (1972). O.C.G.A. § 44–14–361 provides a lien to materialmen who have supplied the materials directly to the owner of realty or to a contractor or subcontractor engaged in making improvement. The supplier of a supplier is not entitled to claim a lien under Georgia's lien statute. *Porter Coatings v. Stein Steel & Supply Company,* 157 Ga.App. 260, 261, 277 S.E.2d 272 (1981); *Georgia–Pacific Corporation,* 126 Ga.App. at 193, 277 S.E.2d 272.

■ This record reflects that defendant SAF has admitted its status as a supplier rather than a materialman. SAF acknowl-

---

1. O.C.G.A. § 16–8–15 states:

Any architect, landscape architect, engineer, contractor, subcontractor, or other person who with the intent to defraud shall use the proceeds of any payment made to him on account of improving real property for any other pur-pose than to pay for labor or service performed on or materials furnished by his order for the specific improvement while any amount for which he may be or become liable for such labor, services or materials remains unpaid commits a felony ...

edges that as a supplier, it could not assert a lien. Yet, it claims to have filed a mechanic's lien to secure its rights. (Defendant's Brief p. 10). There is no material issue of fact to be determined. Both the facts and SAF's admissions establish that it does not come within the statute. It was not qualified to be a lien claimant and was not capable of perfecting a lien on the disputed assets or their proceeds. Therefore, SAF cannot invoke the constructive trust fund doctrine to establish its claim. Further, O.C.G.A. § 16–8–15 is a criminal statute and does not apply. Considered alone, it is insufficient to create a constructive trust. *Bethlehem Steel Corp. v. Tidwell,* 66 B.R. 932, 940 (Bankr.M.D.Ga. 1986); *In re American Bldg. Consultants, Inc.,* 138 B.R. 1015, 1018 (Bankr.N.D.Ga. 1992).

■ SAF contends in the alternative that it is entitled to the imposition of a constructive trust to avoid unjust enrichment. Under Georgia law such a "... constructive trust is a remedial device created by a court of equity to prevent unjust enrichment." *Lee v. Lee,* 260 Ga. 356, 357, 392 S.E.2d 870 (1990); *Atlanta Classic Cars, Inc. v. Chih Hung USA Auto Corp.,* 209 Ga.App. 908, 910, 439 S.E.2d 498 (1993). A constructive trust arises with respect to property the title to which was acquired by fraud, or where it is against equity that the title should be retained by the one who holds it. *Williamson v. Echols,* 205 Ga.App. 453, 455, 422 S.E.2d 329 (1992).

■ SAF has the burden to prove the existence of a constructive trust. It has not offered any evidence which would even suggest fraud or inequitable conduct by Amarlite. The dealings between SAF and Amarlite were simply part of an ongoing business relationship. SAF merely provided anodizing and painting of unfinished aluminum inventory for Amarlite from time-to-time on an open account. While SAF could have taken steps to secure its position, it failed to do so. It has presented no evidence that the trustee's retention of the subject inventory, or its proceeds, subject to the priority lien of Congress is against or contrary to equity. As an unsecured supplier, SAF is entitled to no greater priority than other unsecured credi-

tors of this estate. The court finds and concludes that defendant SAF has failed to establish the existence of a genuine dispute of any material facts and movants are entitled to a judgment as a matter of law. Accordingly, it is

**ORDERED,** that summary judgment is **granted** in favor of movants and against defendant, Southern Aluminum Finishing Company, and plaintiff is authorized to pay the subject funds to Congress.

The clerk is directed to serve a copy of this order upon plaintiff's and defendants' counsel.

IT IS SO ORDERED.