## A98A1372. PATRIOT GENERAL INSURANCE COMPANY v. MILLIS.
(506 SE2d 145)

BLACKBURN, Judge.

Patriot General Insurance Company appeals the grant of summary judgment to its insured Thomas W. Millis, Jr., and to Intervenor Alexander Underwriters General Agency, Inc., in Patriot's declaratory judgment action to establish non-coverage based on Millis' fraudulent insurance application. Patriot also appeals the denial of its motion for summary judgment. We affirm the trial court's rulings.

In this action involving insurance coverage, the trial court granted summary judgment in favor of Thomas W. Millis, Jr., finding

that Patriot General Insurance Company owed coverage to Millis with regard to a wreck in which he was involved on May 14, 1995. It also granted summary judgment to Alexander as to its non-liability for insurance coverage. Patriot appeals, contending that it should not be required to provide coverage due to fraudulent misrepresentations made by one of its agents in the application for insurance coverage which Patriot accepted without knowledge of such fraud. Patriot also appeals the trial court's award of attorney fees levied against it.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Rice v. Huff*, 221 Ga. App. 592, 593 (472 SE2d 140) (1996)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

The record, so viewed, reveals that on March 18, 1995, Millis went to the offices of the Espi Insurance Agency to meet with its proprietor, Nidia Espinal. Millis explained to Espinal that he was seeking immediate insurance coverage for a car which he had just reconditioned and wished to drive that day. After Millis filled out a number of forms and made a $110 down payment to her agency, Espinal presented Millis with a proof of insurance card. This card listed Alexander Underwriters as the named insurer, listed a policy number, and stated that its effective date was March 18, 1995. Alexander Underwriters does not issue individual policies; instead, it accepts applications from individual brokers and then finds other insurance companies willing to issue an individual policy. Millis stated that Patriot was never mentioned during this initial application process.

On April 15, 1995, Millis made an $87 premium payment on the policy to Espi. On May 12, 1995, Millis contacted Espinal and requested a copy of his policy, which Espinal assured him was in her office but which she failed to deliver. On May 14, 1995, Millis was involved in a wreck in which third parties were injured. These third parties threatened to sue Millis on the grounds that he had no insurance. Millis then attempted to contact Espinal again about getting a copy of the insurance policy he believed that she had acquired for him. Espinal evaded Millis for several days, assuring him that she had his policy but failing to produce it. Millis also contacted Alexander Underwriters, but they informed him that they had never received any application for insurance for his benefit.

Subsequently, Millis received a policy of insurance in the mail from Patriot. The effective date of said policy was May 13, 1995, one day before Millis' accident. The application for this policy, which is also dated May 13, 1995, contains signatures of both Millis and

Espinal; however, Millis stated that Espinal never discussed Patriot with him, that he never signed the application document, and that he believed his signature was forged by Espinal.

Espinal had been appointed as an authorized agent for Patriot on October 19, 1993. On May 15, 1995, Patriot sent a letter to Espinal informing her that it would no longer do business with her agency, that her agency contract would expire on June 15, 1995, and that her binding authority was immediately terminated. Nevertheless, when Patriot received the application for Millis on June 2, 1995, after Millis' wreck, it accepted said application which showed Espinal as the acting agent.

Later, after completing an investigation and interviewing Millis, Patriot discovered that the application had been submitted after Millis' accident and that Millis' signature had been forged. As a result, Patriot returned premiums to Millis for which it had billed him and informed him that it did not intend to provide coverage for the accident. Thereafter, on August 21, 1995, Patriot filed a declaratory judgment action to determine whether it was liable for coverage for the accident on May 14, 1995.[1] On October 5, 1995, Alexander Underwriters filed a motion to intervene, which was granted.

On November 20, 1995, Patriot filed a motion for summary judgment, contending that it had no liability to provide coverage for Millis on the date of the accident. On October 22, 1996, Alexander Underwriters filed a motion for summary judgment, also contending that it had no liability to provide coverage for Millis. On January 28, 1997, Millis filed a motion for partial summary judgment, contending that either Patriot or Alexander Underwriters, or both, owed him coverage. On January 26, 1998, the trial court granted Alexander Underwriters' motion, denied Patriot's motion, and granted Millis' motion with regard to Patriot. The trial court also ordered Patriot to pay Millis' attorney fees and costs.

1. Patriot argues that the trial court erroneously granted Millis' motion for summary judgment while denying Patriot's motion. We disagree.

In general, the law of agency applies to insurance agents. "The principal shall be bound by all the acts of his agent within the scope of [her] authority; if the agent shall exceed [her] authority, the principal may not ratify in part and repudiate in part; he shall adopt either the whole or none." OCGA § 10-6-51. In this matter, it is clear that Espinal was the agent of Patriot, as her agency contract did not terminate until June 15, 1995. Accordingly, with respect to her deal-

---

[1] In this action, Patriot sought to reform the contract of insurance such that it would have prospective effect, starting on the day that the application was received.

ings on Patriot's behalf prior to such termination, Espinal had the power to bind Patriot to acts which did not exceed her authority. In this matter, making the logical inference that Espinal fraudulently conveyed Millis' application for insurance to Patriot, it could not be said that Espinal was acting within her authority. Nevertheless, as a general matter, any knowledge gained by an insurer's agent is imputed to the insurer, and the insurer may not deny coverage based on a fact not known to it but known to its agent. *Meadows v. Douglas County Fed. Savings &c. Assn.*, 169 Ga. App. 150, 152 (5) (312 SE2d 169) (1983).

"In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company. If either party must suffer from an insurance agent's mistake, it must be the insurance company, [her] principal. This principle is illustrated by the rule that the insurer is estopped to assert the falsity of answers to questions contained in an application for insurance or the policy itself, where such false answers are inserted by the insurer's agent to whom the applicant for insurance gave correct answers or information." (Punctuation omitted.) *Stillson v. Prudential Ins. Co. of America*, 202 Ga. 79, 82 (42 SE2d 121) (1947). This would not be the case however, if the applicant was a participant in the fraud. Here, Millis did not participate in providing any misrepresentations to Patriot.

"The view generally taken is that the agent in making out the application acts for the insurer, and that the insurer is therefore estopped to assert the mistake, or, as has been said in some cases, the mistake is deemed to be waived by the insurer. The chief reason for the majority rule that an insurer cannot rely upon the falsity of answers inserted in an application for insurance by its own agent in response to questions correctly answered by the insurer is the protection of the insured, who has acted in good faith and answered the inquiries correctly; the insurer, to protect itself, needs only to select competent and trustworthy agents." (Punctuation omitted.) Id. at 83.

Here, even though Patriot had notice of previous problems with Espinal's agency, it accepted the application for Millis submitted by her, and it billed and accepted premium payments from Millis as well, prior to its attempt to reform the policy such that it would not have to provide coverage for the accident. In other words, Patriot was on notice that its agent was neither competent nor trustworthy, yet it accepted Millis' application without prior investigation. In light of the rules set forth in *Stillson*, Patriot cannot avoid living up to the full extent of the policy it granted, notwithstanding its agent's fraud. Moreover, "it is impossible to reconcile the existence of a right to rescind the insurance contract ab initio for fraud with the general

scheme of the compulsory insurance law. . . . Thus it has been universally held or recognized that an insurer cannot, on the ground of fraud or misrepresentations relating to the inception of the policy, retrospectively avoid coverage under a compulsory or financial responsibility insurance law so as to escape liability to a third party." (Punctuation omitted.) *Sentry Indem. Co. v. Sharif*, 248 Ga. 395, 396-397 (282 SE2d 907) (1981). Accordingly, the trial court properly denied Patriot's motion for summary judgment and granted Millis' motion with respect to Patriot's liability.

2. Patriot contends that the trial court erroneously found that Alexander Underwriters was not obligated to provide coverage for Millis. However, even if we were to accept Patriot's contention that a contract of insurance must have existed between Alexander Underwriters and Millis, Patriot has no standing to contest the trial court's ruling with regard to Alexander Underwriters' duty to provide coverage to Millis because this ruling has no effect on Patriot's liability. "In order for a third party to have standing to enforce a contract, it must clearly appear from the contract that it was intended for his benefit. . . . The mere fact that a party would benefit from performance of the agreement is not alone sufficient." (Punctuation omitted.) *Anthony v. Grange Mut. Cas. Co.*, 226 Ga. App. 846, 847-848 (487 SE2d 389) (1997). Moreover, Espinal lacked any authority to issue individual policies on behalf of Alexander Underwriters. Accordingly, we reject this enumeration.

3. Patriot contends that the trial court erroneously levied Millis' attorney fees and costs against it. Patriot contends that the trial court levied such fees sua sponte and that no discussion of fees occurred during the summary judgment hearing in this case. However, no transcript of such hearing was filed by Patriot. "The burden is on the appellant[ ] to prepare a copy of the transcript for inclusion in the appellate record. Accordingly, without a transcript to consider we must presume that the trial court's findings were proper and supported by competent evidence." (Punctuation omitted.) *Stedry v. Mitchell*, 201 Ga. App. 682, 684 (2) (411 SE2d 735) (1991). Alexander's motion for penalty for frivolous appeal is hereby denied.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 13, 1998.

*Eason, Kennedy & Associates, Richard B. Eason, Jr., Carolyn J. Kennedy*, for appellant.
*Harger W. Hoyt, James B. Gurley*, for appellee.