A98A2085. DEER CREEK, INC. v. SECTION 1031 SERVICES, INC.
A98A2086. CURTIS et al. v. SECTION 1031 SERVICES, INC.
A98A2087. WILLIAMSON v. SECTION 1031 SERVICES, INC.
A98A2088. HUGENBERG v. SECTION 1031 SERVICES, INC.
A98A2089. WILLIAMSON et al. v. SECTION 1031 SERVICES, INC.
(510 SE2d 853)

Judge Harold R. Banke.

Deer Creek, Inc., Daniel and Margaret Curtis, James Hugenberg, and Elaine Williamson appeal the trial court's order of January 27, 1998 which confirmed arbitration awards granted to David and Janice Miller and Burdine Enterprises, Inc. ("Burdine").[1] They collectively enumerate 11 errors on appeal.

This case arose after each of the above-mentioned parties executed separate contracts with Section 1031 Services, Inc. ("Section 1031 Services") to facilitate tax-free like-kind exchanges of property pursuant to § 1031 of the Internal Revenue Code. The individual contracts were essentially identical. As part of each agreement, the parties deposited funds in Section 1031 Services' escrow accounts. Each agreement also contained an arbitration clause which specifically applied to "any dispute as to the interpretation of the content, extent, or applicability of this [a]greement or Exchangor's [the parties'] instructions to the Facilitator [Section 1031 Services]."

An individual who identified himself as James Gideon owned Section 1031 Services. Although he initially completed several successful § 1031 transfers, just prior to the commencement of this litigation, Gideon commingled funds in the escrow accounts, withdrew over $2 million and left the country, leaving only $255,000 in the escrow accounts. The parties later learned that Gideon gave the bank holding the escrow accounts the social security number of a deceased

---

[1] That order incorporates by reference the trial court's December 31, 1997 order.

person and probably used a false name.

After several unsuccessful attempts to contact Gideon, the Millers became concerned and made a demand for arbitration under the agreement. *Wachovia Bank of Ga. v. Miller*, 232 Ga. App. 606 (502 SE2d 538) (1998). They also filed a civil action against Section 1031 Services and Wachovia Bank, successfully seeking a freeze on the assets in Section 1031 Services' two escrow accounts and a stay pending arbitration. Id. Shortly thereafter, the arbitrator awarded the Millers the total amount they had deposited in the account, $152,820.96.

After a hearing at which neither Gideon nor the bank holding the escrow accounts appeared, the trial court confirmed the arbitration award and, at the Millers' request, appointed a different facilitator to manage the tax-free exchange. Id. Shortly thereafter, Burdine, which had transferred $204,454.41 into one of the escrow accounts, followed this same procedure and received an arbitration award for the full amount of its claimed investment. However, before Burdine received judicial confirmation of the award, Daniel and Margaret Curtis filed a complaint against Gideon and Section 1031 Services, alleging fraud, breach of fiduciary duty, and breach of contract. In that action, the Curtises moved to vacate both arbitration awards and the Millers' judgment.

After entry of the Millers' confirmation order, Elaine Williamson filed a complaint against those same defendants, alleging conversion, fraud, and breach of contract. She also sought to enjoin the bank from disbursing any of the escrow funds. Williamson, Hugenberg, and Deer Creek were permitted to intervene in the Millers' action. The bank filed an interpleader action. The trial court then consolidated all the separate actions and heard argument on the bank's motion to set aside the order confirming the Millers' arbitration award. The other parties, except the Millers and Burdine, joined with the bank. Neither Gideon nor Section 1031 Services responded to the pleadings or participated in any of these proceedings.

After several hearings, the trial court upheld its ruling confirming the Millers' arbitration award and confirmed Burdine's arbitration award. The bank appealed these rulings and this Court affirmed, finding that the bank lacked standing to raise the issues appealed. *Wachovia Bank*, 232 Ga. App. at 607 (1). *Held*:

This same principle applies to the enumerations raised by Deer Creek, the Curtises, Hugenberg and Williamson (collectively "Deer Creek"). Parties who neither participated in an arbitration, nor were served with a demand for arbitration or an order compelling arbitration may challenge an award on only a few limited grounds. OCGA § 9-9-13 (c); *Gilbert v. Montlick*, 232 Ga. App. 91, 93 (1) (499 SE2d 731) (1998) (absent one of the statutory grounds trial courts are

bound to confirm arbitration awards). Assuming without deciding that Deer Creek is a "party" within the meaning of OCGA § 9-9-13 (c), the only tenable statutory ground it raised is that by overstepping his authority, the arbitrator prejudiced its rights.[2] OCGA § 9-9-13 (c) (1).

The record shows that the Millers sought arbitration because they were unable to contact Gideon to timely give the notifications required to initiate a tax-free exchange. They were concerned that the statutory time would expire before Gideon could be contacted to accomplish this. Burdine likewise became concerned about Gideon's unavailability. Under this evidence, we cannot say that the trial court clearly erred in implicitly finding that the Millers and Burdine sought arbitration regarding their instructions to Gideon and the arbitrator therefore did not overstep his authority. *Gilbert*, 232 Ga. App. at 93 (1).

Notwithstanding Deer Creek's argument to the contrary, nothing in the Code required the Millers or Burdine to apply for an order compelling arbitration under OCGA § 9-9-6 before seeking arbitration. See OCGA § 9-9-13 (b) (4). Such an order would have had no effect on Gideon and Section 1031 Services' absence from the proceedings.[3] See *Wilson v. Southern R. Co.*, 208 Ga. App. 598, 601 (2) (431 SE2d 383) (1993) (the law will not require a futile act). Nor did their absence necessarily invalidate the proceedings. Our law does not unequivocally reject ex parte arbitration. See *Antinoro v. Browner*, 223 Ga. App. 664, 666 (478 SE2d 392) (1996).

As in *Wachovia Bank*, we find that Deer Creek lacks standing to raise the remaining enumerations. *Wachovia Bank*, 232 Ga. App. at 607. Deer Creek's injury does not "flow directly" from the Millers' and Burdine's acts. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 806 (1) (500 SE2d 591) (1998) (RICO case). Its claims are properly directed at Gideon and Section 1031 Services, the parties that purportedly absconded with their funds, not the Millers and Burdine. The Millers and Burdine contracted only with Section 1031 Services in an agreement which contemplates neither the participation nor even the existence of Deer Creek. Deer Creek's failure to offer proof of its status as an intended third party beneficiary of the contract the Millers successfully enforced precludes their claim. See *Patriot Gen. Ins. Co. v. Millis*, 233 Ga. App. 867, 871 (2) (506 SE2d 145) (1998)

---

[2] Deer Creek has presented no evidence showing that the arbitration award was the result of corruption, fraud or misconduct. OCGA § 9-9-13 (b) (1). The mere brevity of the arbitration proceedings is insufficient to establish any of these elements.

[3] *Tillman Group v. Keith*, 201 Ga. App. 680 (411 SE2d 794) (1991), on which Deer Creek relies, is clearly distinguishable. That case holds that a party who fails to move for an order compelling arbitration waives its right to arbitration. Id. at 681 (2).

(For a third party to have standing to enforce a contract, it must clearly appear from the contract that it was intended for his benefit.).

Nor is Deer Creek entitled to relief under a constructive trust theory, assuming, arguendo, that it has standing to assert such a claim and properly raised it in the trial court. See OCGA § 53-12-93 (a).; *Eason v. Farmer*, 261 Ga. 675, 676 (2) (409 SE2d 509) (1991). A constructive trust is a remedial device created in equity to prevent unjust enrichment. *Atlanta Classic Cars v. Chih Hung USA &c.*, 209 Ga. App. 908, 910 (2) (439 SE2d 498) (1993).

Here, the Millers and Burdine were not Deer Creek's debtors or fiduciaries. Deer Creek provided no evidence of their wrong-doing. Nor is there any evidence that the Millers and Burdine knew or should have known of Gideon's scheme to abscond with the money. In these circumstances, we cannot say that the Millers and Burdine would be unjustly enriched if allowed to reclaim their own investments. Nor did Deer Creek establish that it exhausted all available legal remedies. See *Jordan v. Caswell*, 264 Ga. 638, 639-640 (2) (450 SE2d 818) (1994).

*Judgments affirmed in Case Nos. A98A2085, A98A2086, A98A2087, A98A2088, and A98A2089. Johnson, C. J., and Smith, J., concur.*

DECIDED JANUARY 6, 1999.

*Robertson Law Firm, Morgan M. Robertson, Mathew G. Nasrallah, Robertson & Walker, Charles T. Robertson II, Gerald W. Bruce*, for appellants.

*Bentley, Bentley & Bentley, Fred D. Bentley, Jr., Veronica S. Jones*, for Miller et al.

*D. Robert Autrey, Jr.*, for Burdine Enterprises, Inc.